UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE MARIE MAILLET, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 15-13365-MGM |
| CAROLYN W. COLVIN, | * |
| Acting Commissioner of Social Security | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 11 and 16)

July 7, 2016

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

This is an action for judicial review of a final decision by the acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 1383(c)(3) (referring to 42 U.S.C. § 405(g)). Michelle Marie Maillet ("Plaintiff") asserts the Commissioner's decision denying her SSDI – memorialized in a June 16, 2014 decision of an administrative law judge ("ALJ") – is in error. The parties have filed cross-motions for judgment on the pleadings.

For the reasons set forth below, the court will grant Defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. 16) and deny Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11).

II. BACKGROUND

On March 26, 2012, Plaintiff filed for SSDI benefits alleging disability due to depression, anxiety, and bipolar/unipolar mania with a disability onset date of April 7, 2011. (Administrative Record ("AR") 92, 172–78, 203.) After the Commissioner denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ. (*Id.* at 108–110, 112–14.) The ALJ found that Plaintiff was insured through December 31, 2015, and reviewed the record to decide whether Plaintiff was disabled while insured. (*Id.* at 24.)

A. Portions of Plaintiff's Medical History Credited by the ALJ

On April 8, 2011, Plaintiff stopped working and saw her primary care physician because of an anxiety attack she experienced after her husband was diagnosed with cancer. (*Id.* at 46.) Plaintiff's primary care physician referred her to Linda Lapour, a Licensed Independent Clinical Social Worker. (*Id.*) Ms. Lapour treated Plaintiff for a year, prescribing various medications. (*Id.*)

On April 30, 2012, Plaintiff referred herself to Clinical and Support Options reporting mood swings, high anxiety, racing thoughts, and difficulty falling asleep. (*Id.* at 46, 306.) Clinical and Support Options' Barbara Doyle, LMHC, diagnosed Plaintiff with bipolar, mixed, moderate, and obsessive compulsive disorder ("OCD"). (*Id.* at 314.) Plaintiff's appearance, perception, thought process, orientation, insight and judgment were within normal limits. (*Id.* at 310.) Ms. Doyle concluded that Plaintiff was markedly limited, but assigned Plaintiff a GAF score[1] of 58, which denotes moderate limitations. (*Id.* at 314.)

On May 15, 2012, Shawn Channell, Ph.D., ABPP, evaluated Plaintiff upon the request of the Social Security Administration ("SSA"). (*Id.* at 317.) Dr. Channell diagnosed Plaintiff with generalized anxiety disorder, panic disorder with agoraphobia, and OCD. (*Id.* at 321.) During this

---

[1] A GAF score is a number between 1 and 100 that measures "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). A score between 51 and 60 denotes "moderate" limitations. *Id.* at 34. A score between 41 and 50 denotes serious limitations. *Id.*

2

examination, "[Plaintiff's] grooming and dress were appropriate," "her participation was cooperative and attentive," and her "speech was normal in volume, rate, and tone." (*Id.* at 320.) Nonetheless, Dr. Channell assigned Plaintiff a GAF score of 45, denoting severe limitations. (*Id.* at 321.)

On May 16, 2012, the SSA requested state consultants Jon Perlman, Ed.D, and Belen Gannon consider whether Plaintiff was disabled. (AR at 83.) They reviewed Plaintiff's record from March 30, 2012 to May 15, 2012 and found her not disabled because she "continue[d] to engage in routine day to day behaviors such as taking care of home and family." (*Id.* at 86.)

On June 7, 2012, Plaintiff attended her first appointment with the Clinical and Support Options' psychiatrist Thomas Weiss, M.D. Dr. Weiss diagnosed her with bipolar disorder, OCD, and attention deficit disorder. (*Id.* at 443.) Dr. Weiss assigned her a GAF score of 65, denoting mild limitations. (*Id.*)

On July 12, 2012, Plaintiff was admitted to the partial hospitalization program at Baystate Franklin Medical Center for treatment of depression. (*Id.* at 339.) The examining source described Plaintiff as "a pleasant and cooperative young woman, casually dressed and groomed." (*Id.* at 349.) Plaintiff's "[s]peech [was] normally paced and goal directed"; "her cognitive exam [was] intact." (*Id.*) The examining source found "[n]o psychotic thought process or content, no hallucinations in any sphere." (*Id.*) By the end of the year, Ms. Doyle had assigned Plaintiff GAF scores 53 and 61, and Dr. Weiss's reported that medication had stabilized Plaintiff's symptoms and that Plaintiff was socially appropriate. (*Id.* at 99, 445)

In January of 2013, the SSA requested state consultants Caroline Cole, Psy. D., and Patrice Bonkowski to consider whether Plaintiff was disabled. They reviewed Plaintiff's treatment record from March 30, 2012, to November 26, 2012, and found her not disabled because she was helping with chores and childcare, and her symptoms were improving. (*Id.* at 96–106.)

In August of 2013, the SSA requested Ms. Doyle and Dr. Weiss compile a treating sources' functional assessment. (*Id.* at 438–44.) In their assessment, Ms. Doyle and Dr. Weiss indicated that Plaintiff was markedly limited in a number of mental functioning areas. (*Id.* at 442.) The assessment also noted that Plaintiff's GAF score was 65—indicating mild limitation, up from a score of 53 that Ms. Doyle assigned Plaintiff in 2012. (*Id.* at 443.) In January of 2014, Dr. Weiss composed another report, in which he repeated his August of 2013 assessment and concluded that Plaintiff cannot maintain competitive employment. (*Id.* at 453.)

B.  <u>Hearing in Front of the ALJ</u>

ALJ Kim Griswold heard the case on March 14, 2014. (*Id.* at 37–81.) Plaintiff's counsel confirmed that the record was complete. (*Id.* at 42.) Plaintiff testified that she still experienced anxiety, panic, and depression. (*Id.* at 47, 309.) Despite these disabilities, Plaintiff attested to doing the dishes, preparing food, operating a motor vehicle, shopping, and cleaning. (*Id.* at 48–49.)

C.  <u>Record of Plaintiff's Daily Activities</u>

The ALJ reviewed the record for a summary of Plaintiff's daily activities. (*Id.* at 25.) In an April 2012 Function Report, Plaintiff attested to cleaning, cooking, and taking care of children so much that she could not "sit down much if [her] husband [was not] home." (*Id.* at 224.) In a May 2012 Adult Comprehensive Assessment, Plaintiff said that "she enjoys going to church and shopping though she does not drive." (*Id.* at 25, 317–23.) Two months later, in July of 2012, Plaintiff filed a Disability Report in which she indicated that she was unable to perform any household chores and had trouble taking care of her personal hygiene. (*Id.* at 233–34.) On July 26, 2012, however, she told her physician that she was cleaning and taking care of children. (*Id.* at 353.)

D.  <u>The ALJ's Decision</u>

In a decision dated June 16, 2014, the ALJ denied Plaintiff's application for SSDI benefits. (*Id.* at 19-32.) The ALJ gave limited weight to Dr. Channel's 2012 opinion, finding it based on

Plaintiff's subjective complaints and inconsistent with Plaintiff's mental status examination. (*Id.* at 28.) Similarly, the ALJ gave limited weight to the 2013 assessment of Dr. Weiss and Ms. Doyle, finding the assessment internally inconsistent and unsupported by objective mental status findings and the treatment record as a whole. (*Id.* at 30.) The ALJ disregarded Dr. Weiss's 2014 opinion that Plaintiff was unable to perform any activity in a meaningful manner. (*Id.*) The ALJ assigned greater weight to the opinions of State agency non-examining physicians, because they were consistent with the medical record as a whole. (AR at 30.) Additionally, the ALJ found Plaintiff not credible because of varying accounts of her daily activities. (*Id.* at 27.) The ALJ considered Plaintiff's ability to interact with mental health sources and concluded that Plaintiff was capable of social interaction. (*Id.* at 25.) Building on that conclusion, the ALJ determined that Plaintiff could work in a competitive work environment. (*Id.*) The Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. (*Id.* at 1–7.)

Plaintiff challenges the ALJ decision on four grounds: first, "[t[he ALJ failed to properly weigh medical opinion evidence"; second, the ALJ assigned improper weight to state agency consultants; third, the ALJ misread the record; and fourth, "[t]he ALJ failed to properly evaluate [Plaintiff's] credibility." (Pl.'s Mem. at 9, 10, 12, 15.)

### III. STANDARD OF REVIEW

The role of a district court reviewing an ALJ's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizzarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). A conclusion is supported by substantial evidence if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 657 F.2d 218, 222 (1st Cir. 1981). An ALJ resolves any conflict in evidence and determines credibility. *See Evangelista v. Sec'y of Health & Human Servs.*,

826 F.2d 136, 141 (1st Cir. 1987); *see Rodriguez*, 657 F.2d at 222. An ALJ is required to evaluate every medical opinion and to give good reasons for the weight given to opinions of treating sources. *See* 20 C.F.R. § 404.1527(c)(2), (e).

## IV. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if the individual is insured for disability benefits and becomes disabled while insured. *See Baez v. Astrue*, 550 F. Supp. 2d 210, 214 (D. Mass. 2008) (citing 42 U.S.C. § 423(a)(1)(A), (E)). The ALJ determined that in April 2011 and through December 31, 2015, Plaintiff was insured for SSDI. (AR at 24.) Accordingly, the only issue in this case is whether Plaintiff was disabled on or before December 31, 2015.

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional

capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart,* 276 F.3d at 5; *see also* 20 C.F.R. § 416.920(a)(4).

In the instant case, the ALJ found as follows with respect to these steps: Plaintiff had not engaged in substantial gainful activity since April 7, 2011. Plaintiff had severe impairments, namely bipolar disorder, depressive disorder, anxiety disorder with obsessive compulsive traits, and attention deficit hyperactivity disorder, but these impairments did not meet or medically equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels so long as Plaintiff was limited to occasional interaction with the general public, was not required to collaborate with coworkers, and was not strongly criticized. As a result, the ALJ determined that Plaintiff was not disabled.

V. ANALYSIS

Plaintiff makes four arguments challenging the ALJ's decision. First, Plaintiff argues the ALJ improperly decided not to credit the opinions of Dr. Weiss, Ms. Doyle, and Dr. Channell. Next, Plaintiff faults the ALJ's decision to give greater weight to opinions of non-examining medical sources. She also argues the ALJ erred by misreading a document. Finally, she asserts that ALJ's credibility findings with regards to her are not rationally supported and, therefore, must be reversed.

A. <u>The ALJ Offered Sufficient Reason for Giving Limited Weight to Opinions of Dr. Weiss, Ms. Doyle, and Dr. Channell</u>

Plaintiff argues that the ALJ gave little weight to the opinions of three sources, two of whom Plaintiff identifies as treating sources, and did not adequately explain the basis for doing so. (Pl.'s Mem at 4, 9.) An ALJ must give controlling weight to a treating medical source's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). The

ALJ does not need to give controlling weight, however, to opinions of non-medical treating sources like Ms. Doyle, LMHC. *See Taylor v. Astrue*, 899 F. Supp. 2d 83, 88 (D. Mass. 2012). Similarly, opinions concluding that a claimant is unable to work—such as Dr. Weiss's 2014 opinion—"[are] entitled to no deference at all (as [these are] not medical opinion[s])." *Foley v. Astrue*, No. 09-cv-10864-RGS, 2010 WL 2507773, at *8 (D. Mass. June 17, 2010) (citing *Morales-Alejandra v. Med. Card Sys., Inc.*, 486 F.3d 693, 700 n. 7 (1st Cir. 2007)). Furthermore, an ALJ may assign little weight to treating medical sources' opinions if their findings are inconsistent or based primarily on the claimant's allegations, rather than objective findings. *See Colon v. Astrue*, No. 11-cv-30078-GAO, 2012 WL 4106764, at *5 (D. Mass. Sept. 19, 2012). In all cases, an ALJ must provide good reasons for the weight assigned to any medical source. *See* 20 C.F.R. §§ 404.1527(c), (e).

With respect to the 2013 functional assessment completed jointly by Dr. Weiss, a treating medical source, and Ms. Doyle, a treating non-medical source, the ALJ gave the assessment limited weight because it contained internal inconsistencies. (*Id.* at 30.) Dr. Weiss, together with Ms. Doyle, diagnosed Plaintiff with severe restrictions. (*Id.*) At the same time, they assigned Plaintiff GAF scores of 53–65 indicating, at most, moderate symptomatology. (*Id.*) The ALJ also found, in their mental status examinations, Dr. Weiss and Ms. Doyle described Plaintiff as amicable around people and capable of appropriate social interaction. (*Id.* at 30.) The ALJ concluded these discrepancies rendered the report internally inconsistent. *See Bourinot v. Colvin*, 95 F. Supp. 3d 161, 178 (D. Mass. 2015) (an ALJ may rely on the GAF scale to point out inconsistencies, despite the fact that doctors no longer rely on it). Additionally, Dr. Weiss's and Ms. Doyle's conclusions were contradicted by Plaintiff's extensive household responsibilities. (*Id.* at 25, 29, 30.) Taken together, these reasons provide a sufficient basis for assigning less weight to Dr. Weiss's opinion than would normally be assigned to a treating medical source.

Dr. Channell was Plaintiff's consultative medical source. (*Id.* at 28.) The ALJ stated that she gave limited weight to Dr. Channell's 2012 opinion that Plaintiff had severe abnormalities, citing faults within Dr. Channell's opinion. (*Id.*) Dr. Channell assigned Plaintiff a GAF score of 45—indicating severe limitation—but described Plaintiff as cooperative and showing no problems with her thought process or cognitive functions. (*Id.*) No other medical source assigned Plaintiff such a low GAF score. (*Id.*) Thus, the ALJ concluded that Dr. Channell based his findings entirely on Plaintiff's subjective reports while disregarding the results of his own relatively benign mental status examination. (*Id.*) As Dr. Channell's findings of severe disabilities were at odds with his own evaluation and observations of treating sources, the ALJ had substantial reason to assign little evidentiary weight to his opinion. *See Mendes v. Colvin*, No. CV 14-12237-DJC, 2015 WL 5305232, at *9 (D. Mass. Sept. 10, 2015) (finding that little evidentiary weight was appropriate for a doctor's opinion that was inconsistent with the record).

Plaintiff argues the ALJ could not make the aforementioned determinations because the record was incomplete, but she does not explain how additional information would supplement her case or contradict the ALJ's conclusions. (Pl.'s Mem. at 10.) An ALJ is obligated to compile a record from which reasonable conclusions could be drawn, and discharges that duty when the record addresses the issues the claimant brought to the ALJ's attention. *See Ribeiro v. Barnhart*, 149 Fed. Appx. 7, 8 (1st Cir. 2005). In the present case, Plaintiff assured the ALJ that the record properly portrayed her condition. (AR at 41.) Moreover, Plaintiff's testimony to the ALJ repeated the information present in the record, so the ALJ was not alerted by her testimony to any missing information requiring the ALJ to further develop the record. (*Id.* at 36–81.) Accordingly, the court finds that the ALJ properly developed the record. *See Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 6 (1st Cir. 1991) (citation omitted) (the ALJ properly developed the record where Plaintiff did not bring up any new issues to the ALJ's attention).

B. <u>The ALJ Did Not Err in Attributing Greater Weight to the Non-Examining State Agency Sources Than the Weight Assigned to the Treating Sources</u>

Plaintiff argues the ALJ should have assigned greater weight to the opinions of doctors who examined Plaintiff in-person and less weight to the non-examining State agency sources who merely reviewed the records of treating sources. (Pl.'s Mem. at 12.) The evidentiary weight afforded to non-testifying, non-examining physicians varies with the circumstances, including the nature of the illness and the information provided to the expert. *See Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2009) (quoting *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (holding that the ALJ erred in depending on non-examining State agency medical sources, because the first source did not discuss a claimant's condition and the second misunderstood the claimant's condition).

Plaintiff claims the findings of the non-examining sources were flawed because they reviewed her record a year-and-a-half prior to the ALJ hearing and so the record they reviewed was incomplete. *See* SSR 96-6P (S.S.A. July 2, 1996) (a state agency is entitled to greater deference than a treating source if it reviews a complete case record). (Pl.'s Mem. at 13.) An ALJ may rely on old opinions, however, if they are not contradicted by other evidence in the record. *Abubakar v. Astrue,* No. 11–CV–10456–DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012). Moreover, an ALJ is permitted to rely on a state agency review of a record that was still under development. *See Ortiz v. Colvin*, No. CV 13-12793-DPW, 2015 WL 4577106, at *6 (D. Mass. July 30, 2015) (holding that a plaintiff could not claim that the state agency failed to fully review her disability simply because nearly two years passed between the review and the hearing). As in *Ortiz*, Plaintiff alleges that the consultative sources reviewed an old record that was being developed at the time of review. While the review happened a significant period of time before the hearing, Plaintiff does not cite to later additions in the record which contradict the consultants' findings. In fact, the non-examining sources determined that Plaintiff's ability to do extensive household duties, which she attested to

performing at the hearing, demonstrated she was not disabled. The court finds the ALJ did not err by giving greater weight to the state consultants' opinions.

C. The ALJ's Misreading of a Document was Harmless Error

Plaintiff argues the ALJ misread a medical record as indicating improvement in Plaintiff's health, when the document did not support such a conclusion. (Pl.'s Mem. at 16.) As Plaintiff points out, the ALJ supported her conclusions in part by citing improvements in Plaintiff's health as described in the Individual Action Plan dated May of 2012. (AR at 28, 303.) Contrary to the ALJ's description, the Individual Action Plan set out goals for Plaintiff and did not describe improvement in Plaintiff's health. (*Id.* at 28, 305.) However, as Defendant notes, a December 2012 report did indicate improvements in Plaintiff's mental health that were analogous to the goals she set in May of 2012. (Def. Mem. 16; AR at 437.) The ALJ's conclusion is also supported by many benign mental status examinations and Plaintiff's extensive household responsibilities. Even if the ALJ erred, "a remand is not essential if it will amount to no more than an empty exercise." *Cf. Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000). Though the ALJ erred in citing the May 2012 document instead of the document dated December of 2012, the ALJ's citation error is harmless and does not provide a sufficient basis for remand.

D. The ALJ Relied on Substantial Evidence in Evaluating Plaintiff's Credibility

Plaintiff argues the ALJ erred by finding Plaintiff's testimony of her everyday limitations not credible. (Pl.'s Mem. at 15.) An ALJ must ground credibility determination in substantial evidence from the record. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). Thus, an ALJ's findings are upheld so long as they are rationally supported. *See La Rochelle v. Callahan*, No. CIV. A. 96-12583-GAO, 1998 WL 686718, at *5 (D. Mass. Sept. 28, 1998). In the present case, the ALJ stated that she found Plaintiff not credible because of varying accounts of Plaintiff's daily activities. (AR at 27.) For example, the ALJ found that at some examinations Plaintiff

claimed to obsessively clean, while at other examinations Plaintiff claimed not to clean at all. (*Id.*) To the ALJ, Plaintiff attested to doing the dishes, preparing food, shopping, and cleaning. The ALJ found these extensive household obligations inconsistent with Plaintiff allegations that depression, anxiety, and bipolar/unipolar mania render her unable to work. *See Rivera v. Astrue*, 814 F. Supp. 2d 30, 39 (D. Mass. 2011) (holding a plaintiff not credible where he alleged to be disabled but had significant household responsibilities). By explaining the consideration given to Plaintiff's allegations in comparison with her daily activities, the ALJ provided substantial evidence for the decision to find Plaintiff's allegations not entirely credible.

Plaintiff argues the record was incomplete and, as a result, the ALJ's credibility determination was not supported by substantial evidence. (Pl.'s Mem. at 16.) As previously discussed, the ALJ properly developed the record. Even if the record was incomplete, however, the ALJ still was entitled to find that Plaintiff was not credible. Plaintiff's own testimony to the ALJ was inconsistent: she claimed to be unable to work, but also claimed to be responsible for many household chores. *See Teixeira v. Astrue*, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("evidence of daily activities can be used to support a negative credibility finding"). Plaintiff has not suggested how additional treatment notes would resolve the aforementioned inconsistency. As the ALJ observed Plaintiff and her credibility determination is thus entitled to deference, and as the record was complete, the court finds no reversible error. *See Frustaglia*, 829 F.2d at 195.

Plaintiff further asserts the ALJ was wrong to interpret Plaintiff's conversations with medical providers as evidence that Plaintiff could work in a competitive environment. (Pl.'s Mem. at 13.) Had the ALJ relied solely on Plaintiff's ability to communicate with medical sources as defeating a finding of disability, such an interpretation would have given the court pause. The ALJ, however, considered this evidence in connection with the medical sources' opinions, which are replete with benign mental status findings, and Plaintiff's extensive daily responsibilities, which also support a

finding of no disability. Given the careful explanation of her conclusions, the court defers to the ALJ's credibility findings.

VI. CONCLUSION

For these reasons, the court DENIES Plaintiff's Motion for Judgment on the Pleadings, (Dkt. No. 11), and ALLOWS Defendant's Motion for Order Affirming Decision of the Commissioner, (Dkt. No. 16). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge